**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re:<br><br>STEVEN PALLADINO and<br>LORI PALLADINO, ET AL,<br><br>Debtors. | ) ) ) ) ) ) ) ) ) | Chapter 7<br>Case No. 14-11482-MSH<br>(Substantively Consolidated) |
| MARK G. DEGIACOMO, CHAPTER 7<br>TRUSTEE OF STEVEN AND LORI<br>PALLADINO,<br><br>Plaintiff,<br><br>v.<br><br>SACRED HEART UNIVERSITY, INC.,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Adversary Proceeding<br>No. 15-01126 |

**MEMORANDUM OF DECISION**
**ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This is a lawsuit over the meaning of value. It raises the question, when parents pay for the college education of their adult child, do they receive anything of value? To complicate the question, does it matter if the parents happen to be convicted Ponzi scheme felons who, at the time they paid the tuition, had been engaged in perpetrating the Ponzi scheme? The parties in this adversary proceeding, plaintiff, Mark G. DeGiacomo, the chapter 7 trustee of the bankruptcy estate of Steven and Lori Palladino, and defendant, Sacred Heart University (SHU), offer diametrically opposite answers to these questions. They each believe their answers are so clear that I must grant one of them summary judgment.

1

Here are the undisputed facts and background surrounding this dispute. At all times relevant to this proceeding, Nicole Palladino was enrolled as an undergraduate accounting major at SHU in Fairfield, Connecticut. She began her freshman year in the fall of 2012 with an expected graduation date in the spring of 2016. While Nicole was an undergraduate she spent summers and other time away from school living at home with one or both of the Palladinos.[1] During her time as a student at SHU Nicole was at least 18 years of age. Even though Nicole was considered an adult under Massachusetts law, she was a dependent student for college financial aid purposes. This meant that whenever Nicole sought financial aid from SHU, the Palladinos were required to submit financial aid forms and other personal financial information as part of the school's evaluation of Nicole's eligibility. The Palladinos did so on multiple occasions. In addition, the Palladinos consistently declared Nicole as a dependent on their income tax returns. The Palladinos also submitted multiple applications for parental loans to help fund Nicole's college costs. In addition to attempting to assist Nicole through scholarships and loans, the Palladinos paid a portion of her tuition and charges directly to SHU. Between March 1, 2012 and March 31, 2014, the Palladinos paid SHU a total of $64,696.22 to cover these costs. This figure does not include additional expenditures by the Palladinos to support Nicole during her college years such as feeding her whenever she spent time at home.

On July 21, 2014, Steven and Lori Palladino each pled guilty to charges of investment fraud for operating a Ponzi scheme through their company, Viking Financial Group, Inc. Steven was sentenced to ten years in state prison and Lori to five years' probation. On April 1, 2014, the Palladinos filed joint voluntary petitions for relief under chapter 7 of the Bankruptcy Code (11

---

[1] For ease of reference I will refer to Steven and Lori as the Palladinos and to their daughter as Nicole.

2

U.S.C. § 701 *et seq.*) commencing the main case.[2] Mr. DeGiacomo was appointed chapter 7 trustee.

Mr. DeGiacomo initiated this adversary proceeding with a four count complaint against SHU seeking to set aside as fraudulent transfers the $64,696.22 in payments made by the Palladinos on theories of actual and constructive fraud under both Bankruptcy Code § 548 and the Massachusetts Uniform Fraudulent Transfer Act (UFTA), Mass. Gen. Laws ch. 109A, and to recover that sum from SHU for the benefit of the bankruptcy estate.

Mr. DeGiacomo maintains that during the period between 2012 and 2014, the Palladinos were actively engaged in the Ponzi scheme for which they were ultimately convicted. As a result, he invokes the so-called "Ponzi scheme presumption" that all payments by the Palladinos to SHU were made with actual intent to hinder, delay, or defraud creditors. In the alternative, Mr. DeGiacomo urges that the payments were constructively fraudulent because the Palladinos received no reasonably equivalent value from SHU in exchange for the payments and the Palladinos were insolvent at the time the payments were made.

SHU retorts that the Ponzi scheme presumption is inapplicable to the payments in question, and in any event, SHU believes it has rebutted that presumption with undisputed evidence of its good faith and lack of knowledge as to the Palladinos' fraudulent conduct. As for Mr. DeGiacomo's assertion of constructive fraud, SHU acknowledges the Palladinos' insolvency but maintains that the Palladinos did receive reasonably equivalent value in return for their payments.

---

[2] Viking too filed a chapter 7 petition, case no. 14-12116, and its case has been substantively consolidated with the Palladinos' case.

Claiming there are no material facts in dispute here, each party seeks summary judgment in its favor. Fed. R. Civ. P. 56 governs motions for summary judgment in bankruptcy proceedings, per Fed. R. Bank. P. 7056. *McCrory v. Spigel* (*In re Spigel*), 260 F.3d 27, 31 (1st Cir. 2001). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

In counts I and III of his complaint, Mr. DeGiacomo asserts that the payments to SHU were actually (as opposed to constructively) fraudulent under Bankruptcy Code § 548(a)(1)(A) and Mass. Gen. Laws ch. 109A § 5(a)(1). He bases his assertion on the Ponzi scheme presumption. This legal construct stands for the proposition that "the existence of a Ponzi scheme establishes that transfers were made with the intent to hinder, delay and defraud creditors." *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec., LLC)*, 440 B.R. 243, 255 (Bankr. S.D.N.Y. 2010).

Mr. DeGiacomo urges the broadest possible application of the Ponzi scheme presumption so that every transfer of property by a Ponzi scheme perpetrator regardless of its purpose would be presumed fraudulent. SHU advocates a narrower application of the presumption, limiting it to transfers in furtherance of the scheme, which it asserts would eliminate the Palladinos' college payments on Nicole's behalf from the presumption.

I adopt SHU's interpretation of the Ponzi scheme presumption as more reflective of the policies and objectives the presumption is intended to address. "All transfers made *in furtherance of that Ponzi scheme* are presumed to have been made with fraudulent intent." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 471 (Bankr. S.D.N.Y. 2015) (emphasis added). "[A] generalized intent to defraud," while certainly present in a Ponzi scheme case, "is not sufficient, by itself, to show that the transfers in question were made with fraudulent intent." *Welt v. Publix Super Markets, Inc. (In re Phoenix Diversified Inv. Corp.)*, Adversary No. 10-03005-EPK, 2011 WL 2182881, at *3 (Bankr. S.D. Fla. June 2, 2011). Transfers that "perpetuate" or "are necessary to the continuance of the fraudulent scheme" are subject to the presumption because they relate directly to the intent to defraud. *Id.* Extending the scope of the Ponzi scheme presumption as broadly as Mr. DeGiacomo advocates would ensnare transferees indiscriminately when the scheme inevitably implodes:

> By definition, a Ponzi scheme is driven further into insolvency with each transaction. Therefore, by the trustee's reasoning, no one who in any way dealt with, worked for, or provided services to the debtors could prevent avoidance of any transfers they received. The debtors' landlord, salaried employees, accountants and attorneys, and utility companies that provided services to the debtors all assisted the debtors in the furtherance of their fraudulent scheme. In spite of this fact, we do not think that the goods and services that these persons and entities provided were without value or that transfers to them could be set aside as fraudulent conveyances. We see no material distinction between such persons or entities and appellants. All were necessary to the success of the debtors' scheme.

*Merrill v. Allen (In re Universal Clearing House Co.)*, 60 B.R. 985, 999 (D. Utah 1986) (footnotes omitted). *See also Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Inv. Corp.)*, 256 B.R. 664, 681 (Bankr. S.D.N.Y. 2000) (quoting *In re Universal Clearing House Co.* with approval), *aff'd sub nom. Balaber-Strauss v. Lawrence*, 264 B.R. 303 (S.D.N.Y. 2001). Allowing Mr. DeGiacomo to prevail under an actual fraud theory here would mean ignoring the nature of the transactions engaged in by the Palladinos in their day to day affairs (morally

5

culpable as they may have been in relation to the scheme itself), like buying groceries, paying medical bills, and supporting their child. "The Ponzi scheme presumption must have some limitations, lest it swallow every transfer made by a debtor, whether or not such transfer has anything to do with the debtor's Ponzi scheme." *Kapila v. Phillips Buick-Pontiac-GMC Truck, Inc. (In re ATM Fin. Servs., LLC)*, Adversary No. 6:10-ap-44, 2011 WL 2580763, at *5 (Bankr. M.D. Fla. June 24, 2011).

Absent the Ponzi scheme presumption, Mr. DeGiacomo does not press the argument that the Palladinos paid SHU with actual intent to defraud their creditors. He does not quarrel with SHU's position that it had no knowledge of the Palladinos' fraudulent activity and that it received their payments in good faith. The facts agreed to by the parties establish that the Palladinos made the payments for one reason only, to enable their daughter, Nicole, to receive a college education. Summary judgment shall enter in favor of SHU on counts I and III of the complaint.

As indicated at the outset, this litigation is really about value. Were the Palladinos' payments to SHU constructively fraudulent under Bankruptcy Code § 548(a)(1)(B) and Mass. Gen. Laws ch. 109A § 5(a)(2), as alleged in counts II and IV of Mr. DeGiacomo's complaint, because the Palladinos did not receive reasonably equivalent value from SHU in exchange for the payments? There is no dispute that but for the question of value, the Palladinos' payments would qualify as constructively fraudulent. The funds transferred belonged to the Palladinos, the transfers were made within the two and four year statutory lookback periods under the Bankruptcy Code and the UFTA, and the Palladinos were insolvent when the transfers were made.

This is not the first lawsuit brought by a bankruptcy trustee to recover college tuition payments made by a parent for a child. Prior decisions offer conflicting guidance. Courts that have rejected trustees' efforts to claw back tuition payments view such payments as essential to maintaining the family unit. *Sikirica v. Cohen (In re Cohen)*, Adversary No. 07-02517-JAD, 2012 WL 5360956 at *10 (Bankr. W.D. Pa. Oct. 31, 2012), *rev'd on other grounds*, 487 B.R. 615 (W.D. Pa. 2013). "[T]here is something of a societal expectation that parents will assist with such expense if they are able to do so." *Trizechahn Gateway, LLC v. Oberdick (In re Oberdick)*, 490 B.R. 687, 712 (Bankr. W.D. Pa. 2013). Other courts have found that tuition payments for children were avoidable because the benefits parents received in exchange were not "concrete" or "quantifiable." *Gold v. Marquette Univ. (In re Leonard)*, 454 B.R. 444, 457 (Bank. E.D. Mich. 2011); *see also Banner v Lindsay (In re Lindsay)*, Adversary No. 08-9091 (CGM), 2010 WL 1780065, at *9 (Bankr. S.D.N.Y. May 4, 2010) (holding that college tuition payments were avoidable because the parents were under no legal obligation to pay).

Ethereal or emotional rewards, such as love and affection, do not qualify as value for purposes of defeating a constructive fraudulent conveyance claim. *Pereira v. Wells Fargo Bank, N.A. (In re Gonzalez)*, 342 B.R. 165, 169 (Bankr. S.D.N.Y. 2006); *see also Tavenner v. Smoot*, 257 F.3d 401, 408-09 (4th Cir. 2001). Mr. DeGiacomo correctly points out that under Massachusetts law a parent has no legal obligation to support an adult child and so, he suggests, the only possible justification the Palladinos could have had for paying Nicole's college costs were of a recondite variety.

Like his position on the Ponzi scheme presumption, I find Mr. DeGiacomo's approach to valuing the Palladinos' payments to SHU overly rigid. In separate affidavits filed in support of SHU's motion for summary judgment the Palladinos offer consistent explanations as to why they

7

made the payments to SHU. As stated by Lori Palladino, for example, in her affidavit, Docket Entry 40-3, at ¶¶ 16-17:

> As Nicole's mother, I feel obligated to pay Nicole's tuition because I am her mother and she shouldn't have to come out of SHU saddled with thousands of dollars in loans. Assisting Nicole with her loans gives her the best chance of graduating from SHU. Upon graduating, Nicole will be in the best position to go to graduate school, secure a job and become financially self-sufficient by finding her own place to live, paying her own bills and paying for her own food…
> If Nicole is unable to graduate from SHU, she will either move back home with me, or she will obtain her own place to live in which case I will have to pay for her housing, bills and food costs. Either of these options result [sic] in a financial burden on me. The value to my husband and I [sic] in exchange for paying the tuition to SHU is a financially self-sufficient daughter resulting in an economic break to us.

Mr. DeGiacomo does not dispute that the Palladinos' statements represent their views as to why they paid Nicole's college costs, but he asserts that those views are irrelevant because they do not establish "concrete" and "quantifiable" value.

I find that the Palladinos paid SHU because they believed that a financially self-sufficient daughter offered them an economic benefit and that a college degree would directly contribute to financial self-sufficiency. I find that motivation to be concrete and quantifiable enough. The operative standard used in both the Bankruptcy Code and the UFTA is "reasonably equivalent value." The emphasis should be on "reasonably." Often a parent will not know at the time she pays a bill, whether for herself or for her child, if the medical procedure, the music lesson, or the college fee will turn out to have been "worth it." But future outcome cannot be the standard for determining whether one receives reasonably equivalent value at the time of a payment. A parent can reasonably assume that paying for a child to obtain an undergraduate degree will enhance the financial well-being of the child which in turn will confer an economic benefit on the parent. This, it seems to me, constitutes a *quid pro quo* that is reasonable and reasonable equivalence is all that is required.

Summary judgment shall enter in favor of SHU on counts II and IV of the complaint.

Dated: August 10, 2016

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:   Mark G. DeGiacomo, Esq.
Ashley S. Whyman, Esq.
Murtha Cullina LLP
Boston, MA
for the plaintiff Chapter 7 Trustee

Elizabeth J. Austin, Esq.
Pullman & Comley, LLC
Bridgeport, CT
for the defendant, Sacred Heart University, Inc.